**McCUTCHEON et al. v. WOZENCRAFT, Mayor, et al. (No. 1797.)**

(Court of Civil Appeals of Texas. Amarillo. April 13, 1921. Rehearing Denied May 25, 1921.)

**1. Franchises ☞1—A franchise must be a grant by the sovereignty.**

A right that properly may be denominated a franchise must be granted by the sovereignty (under our system of government, the legislative department thereof), and be of such a nature that, without the express legislative authority contained in the grant, it could not be lawfully exercised by the grantee.

**2. Municipal corporations ☞680, 681(3)— Rights granted under motorbus ordinances held not a "franchise" within charter.**

Rights to run over the streets of a city to be granted to motorbus operators under the terms of proposed ordinances held not to come within the meaning of the term "franchise," as used in Dallas City Charter, § 8, subd. 2, giving the city power to confer on any person or corporation franchises or rights to use the property of the city to furnish any general public service, etc.

[Ed. Note.—For other definitions, see Words and·Phrases, First and Second Series, Franchise.]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit for mandamus by Currie McCutcheon and others against Frank Wozencraft, Mayor, and others. From judgment sustaining general demurrer to the petition, plaintiffs appeal. Affirmed.

McCutcheon & Church, W. F. Bane, Muse & Muse, and Joe Utay, all of Dallas, for appellants.

Jas. J. Collins, Allen Charlton, and Carl B. Callaway, all of Dallas, for appellees.

BOYCE, J. Appellants brought this suit for mandamus against the mayor and commissioners of the city of Dallas, to require said persons to submit an alleged franchise ordinance to a vote of the electors of the city. It was alleged: That the petitioners had presented to the board of commissioners of said city a franchise ordinance, by the terms of which the city was to grant to the said petitioners a franchise to operate a motorbus system in the city of Dallas, and between said city and other cities and villages in the surrounding territory, and to operate said system "in, over, under, along, and across" the streets of said city. That the board had failed and refused to pass on the grant of said franchise one way or the other, for a period of six months after request therefor; that the petitioners thereafter filed their application, supported by a petition of qualified voters of the city, as provided by the city charter in such cases, to have the ordinance submitted to a vote of the people of the city at the next regular city election; and that the board of commissioners had refused this application. The charter provisions of the city under which the petitioners claim they had the right to have such alleged franchise ordinance submitted to a vote were duly pleaded, and will be hereafter set out at such length as is necessary to a decision of the case. The court sustained a general demurrer to the petition for mandamus, and this appeal is taken from this judgment of the trial court.

The provisions of the city charter on which appellants rely to sustain the rights asserted in their petition are found in various sub-divisions of section 8, entitled "Franchises," of article 2 of the city charter. Subdivision 1 of said section 8 provides that—

"The ownership, right of control, and use of the streets, highways, alleys, parks, public places, and all other real property of the city of Dallas, is hereby declared to be inalienable to said city, except by ordinance passed by vote of the majority of the board of commissioners, as hereinafter provided, and no franchise or easement involving the right to use same, either along, across, over, or under same, shall ever be valid unless expressly granted and exercised in compliance with the terms hereof, and of the ordinance granting the same."

Subdivision 2 of said section 8 is as follows:

"The city of Dallas shall have the power, subject to the terms and provisions hereof, by ordinance, to confer upon any person or corporation the franchise or right to use the property of the city, as defined in the preceding section, for the purpose of furnishing to the public any general public service, including heat, light, power, telephone service, refrigeration, steam, or the carriage of passengers or freight within the said city and its suburbs, over the streets, highways, and property of said city, or for any other purpose whereby a general service is to be furnished to the public for compensation or hire paid to the franchise holder, whereby a right to in part appropriate the streets, highways, or other property of the city is necessary or proper, provided that no franchise shall

be granted by said city to any person, firm, or corporation, to own, control, or operate waterworks therein."

Subdivision 4 of said section provides how an ordinance to grant a franchise shall be adopted by the board of commissioners, and, in certain cases, submitted to a vote of the electors of the city, and in this connection there is a provision to the effect that, in case a franchise is refused by the board of commissioners, "and a failure to finally pass on an application within six months after the filing of such application shall be construed as a refusal," then the matter may be submitted to the qualified voters, provided a petition therefor, signed by 500 of the bona fide qualified voters of the city, be presented to the board of commissioners.

[1, 2] The first question for decision is whether the rights which were to be granted under the terms of the proposed ordinances come within the meaning of the term "franchise" as it is used in subdivision 2 of said section 8 of the city charter. A right that may be properly denominated a franchise must be granted by the sovereignty (under our system of government, the legislative department thereof) and be of such a nature that, without the express legislative authority contained in the grant, it could not be lawfully exercised by the grantee. California v. Central Pacific Railway Co., 127 U. S. 1, 32 L. Ed. 157; R. C. L. vol. 12, p. 174; 3 Words & Phrases, p. 2930; 2 Words & Phrases (Second Series) p. 627. Now the streets of the city were public highways, and it would not have been unlawful for the petitioners, in the absence of regulatory prohibitions contained in ordinances adopted by the city regulating the use of the street, or in some state law to the same effect, to run over such streets with their motorbusses and vehicles in carrying on their business. Such business could have been lawfully exercised over the streets of the city without any express legislative grant. It required express legislative prohibition to make this proposed use of the streets unlawful, rather than express grant to render it lawful. So that the permission which they now seek to secure by this ordinance, and which they term a franchise, does not thus seem to be, properly speaking, a franchise. It is true that the city possessed the power to regulate for the benefit of the public, the use of the streets, and might establish reasonable conditions under which such streets might be used, and require those using particular kinds of vehicles or engaging in the business of transportation to secure license, and to use the streets subject to such reasonable regulations as the city might adopt for the public good, but the permission for the use of the streets that would thus be secured would be a license, and not a franchise. It appears that the city has seen fit to adopt ordinances

regulating such matters, and the validity of such ordinances, as well as similar ones adoped by other cities of the state, has been the subject of question in a number of cases before the appellate courts of this state. Some of these cases are: Lindsley v. Dallas Consolidated Street Railway Co., 200 S. W. 207; City of Dallas v. Gill, 199 S. W. 1144; Greene v. City of San Antonio, 178 S. W. 6; Ex parte Sullivan, 77 Tex. Cr. R. 72, 178 S. W. 537; Ex parte Bogle (Tex. Cr. App.) 179 S. W. 1193; Auto Transit Co. v. City of Fort Worth, 182 S. W. 685.

The state Legislature has also passed laws regulating the use of the state highways by automobiles, requiring those using them to secure a license, etc. Laws of 1917, pp. 474–485. These laws also expressly recognize the right of local authorities to license and regulate the operation of such vehicles in the respective cities of the state. Section 23 (Vernon's Ann. Pen. Code Supp. 1918, art. 820r) of said act. The provisions of such ordinances, as well as of all state laws on the subject, all based on the idea that the character of right in the use of the streets of the city which the appellant seek to acquire exists without express grant, but is the subject of legislative control and license, rather than by grant as a franchise. In some of the cases cited, one of the grounds of attack on the ordinances in question was that they effected an unlawful discrimination against a particular class of citizens as to the use of the streets of the city, and the decisions proceed on the theory that, if there were any such discrimination between persons of the same class, such fact might render the laws invalid. And it may be that, if the city should grant a franchise to one set of men, such grant might be successfully attacked as an unlawful discrimination, or as creating a monopoly, in violation of the provisions of the Constitution. See article 1, § 3, and article 1, § 26; White v. Holman, 44 Or. 180, 74 Pac. 933, 1 Ann. Cas. 843. It is not necessary, however, to enter into an investigation of the questions that might be thus suggested. There are other provisions of the city charter that deal with the licensing and regulation of persons engaged in this kind of business in the city. Article 2, § 3, entitled "Police Powers," subdivisions 6 and 33. It was held in the case of Lindsley v. Dallas Consolidated Street Railway Co., 200 S. W. 212, that from the language used in some of the provisions of section 8 itself—

"It is manifest that it was the intention of the Legislature, and that the language used does distinguish, between a franchise and a public privilege."

So we think the city authorities are warranted in the construction they have placed on this charter in the conclusion that the provisions for grant of a franchise proper

do not apply to this kind of right; that it is merely the subject of license and regulation. We are sustained in this conclusion by the decisions of the Dallas Court of Civil Appeals, in which these same provisions of the charter were under consideration. Lindsley v. Dallas Consolidated Street Railway Co., 200 S. W. 212; Dallas v. Gill, 199 S. W. 1144. There are some expressions in the opinion in the case of Greene v. City of San Antonio, 178 S. W. 6, which, taken alone, might appear to be contrary to this conclusion, but we do not think that the decision of that case, as a whole, is in conflict with our holding.

Other reasons are also urged in behalf of the appellee, in support of the decision of the trial court, which, in view of the above holding, it is unnecessary to discuss.

We are of the opinion that the judgment should be affirmed.