GRAND RAPIDS, GRAND HAVEN & MUSKEGON RAILWAY CO. v. STEVENS.

HIGHWAYS AND STREETS—COMMON CARRIERS—MUNICIPAL CORPORATIONS—REGULATION OF HIGHWAYS—INJUNCTION.

In a suit by an electric railroad company to enjoin defendants from operating motor vehicles as common carriers of passengers and freight on the public highways, a showing by defendants that the State has passed no general law regulating such common carriers and that they have complied with all the rules and regulations prescribed by the municipalities in which they operate, *held*, to justify dismissal of the bill.

Appeal from Ottawa; Cross (Orien S.), J.    Sub-

mitted April 13 1922.    (Docket No. 59.)    Decided
July 20, 1922.

Bill by the Grand Rapids, Grand Haven & Muskegon
Railway Company against Ernest M. Stevens and
others to enjoin the operation of motor vehicles as
common carriers.    From a decree dismissing the bill,
plaintiff appeals.    Affirmed.

*Carroll, Kirwin & Hollway* and *William Chamber-
lain,* for plaintiff.

*Louis H. Osterhous* and *Cross, Foote & Sessions,* for
defendants.

MOORE, J.    The bill of complaint was filed in this
cause to restrain the defendants from operating motor
vehicles as common carriers.    Proofs were taken in
open court.    The plaintiff is a Michigan corporation
operating an electric railroad as a common carrier of
passengers and freight between Grand Rapids, Grand
Haven and Muskegon and intermediate points along
its lines.    Plaintiff is operating under a franchise and
in accordance with law.    The defendants operate
motor buses and trucks, carrying passengers and
freight for hire, using the public streets and highways
for that purpose.    The defendants have no franchise
to operate as common carriers.    Their business, in
a measure, is in competition with the plaintiff, al-
though some of them make localities not reached by
the plaintiff, and give service to passengers who would
not be passengers of the plaintiff company.    Because
of this competition an injunction is sought.

It is the claim of the plaintiff that the defendants
are operating as common carriers without any author-
ity of law.    That the control of the highways is vested
in the State and before the defendants can legally use
the highways for the purpose of conducting the busi-

ness of common carriers it is necessary that they be expressly authorized by the State so to do. That the defendants by their unauthorized acts are unlawfully in direct competition with the plaintiff, and that the plaintiff has suffered damages in the loss of business by reason of the acts of the defendants.

The defendants claim that they have a common right to use the public streets and highways to conduct their business as common carriers by motor buses and trucks provided they comply with all regulations prescribed by the State or the municipalities through which they operate. They claim the State has no general law regulating common carriers of passengers and freight by motor buses and trucks, and that they have complied with all the rules and regulations prescribed by the municipalities in which they operate. That no rules or regulations have been prescribed by some of the municipalities through which they operate. The defendants carry freight and passengers for hire in the territory served by the plaintiff, and in some measure defendants carry freight and passengers which would otherwise be transported by the plaintiff. The defendants are not violating any law of the State nor any rule or regulations of any municipality.

The chancellor expressed himself as follows:

"The State as yet has not passed any general law regulating the operation of motor buses and trucks as common carriers. Until such a law is passed the defendants have the right to operate their motor buses and trucks upon the public highways as long as they comply with the local rules and regulations prescribed by the several municipalities through which they operate. It is therefore ordered that the bill of complaint be dismissed."

A decree was entered and the case is brought here by appeal.

Counsel for the appellant succinctly state their claim as follows:

"The determinative issue in this litigation is one of law and may be summarized as follows:

"Under the statutes and laws of Michigan may omnibus lines be lawfully established and operated along and over the public highways of the townships, cities, towns and villages of the State without securing the specific consent of such municipalities thereto? Or restated:

"Is failure to prohibit to be construed as an implied consent to this special and extraordinary use of the highways?

"The trial court held that in the absence of restrictive legislation the use made of the public highways by defendants was a lawfully authorized use, and we may fairly concede that if the consent of the State or its municipal subdivisions is to be inferred or assumed from the absence of express prohibitory legislation the trial court's decision is correct."

The briefs are long, elaborate and able. We again quote from appellant's brief:

"The cases will be discussed in the following order:

(1) Those relating to competition between street railway companies and jitney buses.

(2) Those relating to competing railroad companies.

(3) Those relating to competing gas and electric companies.

(4) Those relating to competing ferries and bridge and plank road companies. * * *

"1. Competition between street railway companies and jitney buses.

"The leading case upon this subject is that of *Memphis Street Railway Co.* v. *Rapid Transit Co.,* 133 Tenn. 99 (179 S. W. 635, P. U. R. 1916A, 834, L. R. A. 1916B, 1143 Ann. Cas. 1917C, 1045). * * *

"Other similar cases are: *Puget Sound, etc., Power Co.* v. *Grassmeyer,* 102 Wash. 490 (173 Pac. 504, L. R. A. 1918F, 469); *United Traction Co.* v. *Smith,* 115 N. Y. Misc. Rep. 73 (187 N. Y. Supp. 377); *Niagara Gorge R. Co.* v. *Gaiser,* 109 N. Y. Misc. Rep. 38 (178 N. Y. Supp. 156); *Brooklyn City R. Co.* v. *Whalen,* 191 App. Div. 737 (172 N. Y. Supp. 283)."

We quote sufficiently from the opinion in the *Memphis Street Railway Company Case, supra,* to show that it is distinguishable from the instant case.

"We are of opinion, moreover, that complainant is entitled to the injunction sought on another ground. As we have stated, the operation of jitneys on the streets of any incorporated city or town in Tennessee without municipal permission, when the owners have executed no bond, is absolutely unlawful. Such operation is in defiance of the statute of this State and amounts to a public nuisance. * * *

"Under the authorities quoted there can be no doubt but that the illegal operation of the swarm of jitneys described in the bill, run by irresponsible owners, racing with the street cars for patronage, and otherwise imperiling the safety of the public, in violation of law, constitutes a nuisance."

We quote from the headnote of *Puget Sound, etc., Power Co., supra:*

"A street car company having a franchise to carry passengers for hire in a city may maintain an action to enjoin, as unlawful interference therewith, the carriage of passengers, cutting down its revenues, by motor vehicles in defiance of Rem. Code, §§ 5562-37 *et seq.,* regulating the privilege and requiring as a condition precedent that such carriers give a bond to protect passengers against personal injuries; and it is immaterial that the company has no interest in the bond."

A reference to the New York cases will also show that they are readily distinguishable from the instant case. It is true there is language used in some of the opinions which sustains the contention of appellants, but it was *dictum,* but if it was not we should not be inclined to follow it.

The language of Chief Justice COOLEY, speaking for the court in *Macomber* v. *Nichols,* 34 Mich. 212 (22 Am. Rep. 522), is germane to the subject under discussion. We quote:

"A highway is a public way for the use of the public in general, for passage and traffic, without distinction. *Starr* v. *Railroad Co.,* 4 Zab. (N. J.) 597. The restrictions upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and the inconvenience must be submitted to when they are only such as are incident to a reasonable use under impartial regulations. When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods; and it cannot be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly. A highway established for the general benefit of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them; and if the law should preclude the adaptation of the use to the new methods, it would defeat, in greater or less degree, the purpose for which highways are established."

See Huddy on Automobiles (5th Ed.), p. 51; *Jitney Bus Ass'n* v. *Wilkes-Barre,* 256 Pa. St. 462 (100 Atl. 954) ; *Curry* v. *Osborne,* 76 Fla. 39 (79 South. 293, 6 A. L. R. 108).

We shall not undertake to go over the many cases cited by the respective counsel, but refer those interested to the briefs filed in the case. We shall content ourselves with saying that the subject of regulating the operation of jitneys, trucks and omnibuses on the highways is one for the legislature and for the municipalities and not one for the courts.

The decree is affirmed, with costs to the appellees.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.