OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE, V. CITY OF OMAHA ET AL., APPELLANTS.

FILED MARCH 19, 1926.  No. 25225.

1. **Municipal Corporations:** DISCRETIONARY POWERS. "The courts will not ordinarily inquire into the motive of a city council in its exercise of a discretionary power conferred upon it by the legislature." *Enders v. Friday,* 78 Neb. 510.

2. **Highways:** RIGHT TO USE. The right to use the public highways of the state by the ordinary and usual means of transportation is common to all members of the public without distinction, and extends to those engaged in the business of carrying passengers or freight for hire by such ordinary and usual means of trans-portation, as well as to individuals pursuing a strictly private business, subject to the power of the state, by legislative enact-ment, to impose reasonable and impartial regulations upon such use, which power may be delegated by the legislature to the governing bodies of municipal corporations.

3. **Franchises.** A franchise is a special privilege conferred by gov-ernment upon individuals which does not belong to the citizens of the country, generally, of common right.

4. **Municipal Corporations:** ORDINANCE REGULATING AUTOMOBILES. Ordinance No. 12696 of the city of Omaha, passed and approved June 30, 1925, examined and construed, and *held* to be regulatory in its character, and not of a class of ordinances properly described as "any ordinance or resolution granting, extending, changing, or modifying the terms and conditions of a franchise;" and that permits granted in accordance with its terms are valid.

APPEAL from the district court for Douglas county: WILLIAM G. HASTINGS, JUDGE. *Reversed and dismissed.*

*John P. Breen,* for appellants.

*John L. Webster, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

Upon the petition of plaintiff,, a Nebraska corporation engaged in the operation of a street car system in Omaha under a franchise not exclusive by its terms, a permanent injunction was granted by the district court for Douglas county, Nebraska, inhibiting the city of Omaha and its officials from in any manner enforcing ordinance No. 12696, passed and approved June 30, 1925, and from issuing permits or licenses thereunder to any person, firm, or corporation, to operate auto-busses upon the streets of said city as common carriers. From this judgment the defendants have appealed.

Ordinance No. 12696, against which this action proceeds, defines, and regulates the use of auto-busses as common carriers of persons within the city of Omaha. It provides, among other requirements, for investigation of applicants seeking to engage in the business defined, either as proprietors of vehicles sought to be employed, or as drivers thereof; provides rules to be observed by those engaged in said employment; confines operations of licensees to routes having fixed termini; restricts charges for services to a definite sum; requires as a condition precedent to commencement of business the filing of a good and sufficient bond, conditioned for the payment of all damages sustained by any person due to negligence committed in the operation of the auto-busses licensed; prohibits under penalties any person from engaging in said business without compliance with the terms of the ordinance, including receipt from proper authorities of a written permit or license, and by its terms subjects the permit so granted to revocation by the city authorities for failure to observe the terms and conditions of the ordinance; provides that "no permit granted under this ordinance shall give the holder thereof a vested right to use any of the streets of the city, nor operate as an estoppel against the city in the event the city

should, at any time, see fit to modify or amend the provisions hereof, or entirely revoke the right to operate under such permit by modification or repeal of this ordinance."

The plaintiff contends that the city of Omaha has no inherent or statutory power to issue permits to auto-busses to operate as common carriers upon its streets; that the ordinance before us is an attempt by the city to confer upon licensees, to whom permits might be granted therefor, "a franchise;" that, assuming this power to exist, it is necessary in order to accomplish the end sought that the provisions of section 3719, Comp. St. 1922, be complied with; that this was not done, and the ordinance, in the form attempted, is wholly unauthorized by law and void; that no rights could be conferred upon the permit-holders thereunder to, in any manner, compete with the plaintiff in carrying on the business of common carriers of passengers on the public streets of Omaha; that any acts of competition by any such parties would be an impairment or infringement of the rights granted to plaintiff by the terms of the charter; and that the mayor and council can be and are lawfully, therefore, restrained from attempting to proceed under the terms of said ordinance.

It may be said in passing that the court has not overlooked the contentions of plaintiff based upon the alleged bad faith and improper motives of certain of the defendant officers. It is thought, however, that this court may not review the legislative acts of the mayor and council of the city of Omaha if the same are within its constitutional and statutory limitations. In other words, it is well settled that the motives of the city council in enacting an ordinance cannot, as a general rule, be inquired into by the courts. *Enders v. Friday,* 78 Neb. 510; *Huston v. City of Des Moines,* 176 Ia. 455; *Schoenfeld v. City of Seattle,* 265 Fed. 726; *Soon Hing v. Crowley,* 113 U. S. 703.

In the consideration of the question of the inherent or statutory powers conferred upon municipalities of the metropolitan class to accomplish the result intended, evidenced solely by the terms of the ordinance involved in this contro-

versy, our attention is challenged to the inherent nature of the right involved to which this ordinance applies. It is to be remembered that the power to create and confer a right not heretofore existing is distinct and different from permitting under proper regulation the exercise of power possessed by the citizens generally of common right. Is therefore the carriage of persons in auto-busses over the public streets of Omaha by common carriers exercised solely pursuant to grant, or is it, in the absence of legislation, the exercise of a common right? In other words, is the ordinance a grant or a regulation?

"A highway is a public way for the use of the public in general, for passage and traffic, without distinction. * * * The restrictions upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and the inconveniences must be submitted to when they are only such as are incident to a reasonable use under impartial regulations. * * * A highway established for the general benefit of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them; and if the law should preclude the adaptation of the use to the new methods, it would defeat, in greater or less degree, the purpose for which highways are established." *Macomber v. Nichols,* 34 Mich. 212. A public street is a public highway.

"The right to use the public highways of the state by the ordinary and usual means of transportation is common to all members of the public without distinction, and extends to those engaged in the business of carrying passengers or freight for hire by such ordinary and usual means of transportation, as well as to individuals pursuing a strictly private business, subject to the power of the state, by legislative enactment, to impose reasonable and impartial regulations upon such use, which power may be delegated by the legislature to the governing bodies of municipal corporations. 13 R. C. L. 251-255; *White Oak Coal Co. v. Manchester,* 109 Va. 749, 132 Am. St. Rep. 943; *Bogue v. Ben-*

*nett,* 156 Ind. 478, 83 Am. St. Rep. 212; *Commonwealth v. Stodder,* 2 Cush. (Mass.) 562, 48 Am. Dec. 679; *Sumner County v. Interurban Transportation Co.,* 141 Tenn. 493, 5 A. L. R. 765; *Cicero Lumber Co. v. Cicero,* 176 Ill. 9, 42 L. R. A. 696, 68 Am. St. Rep. 155." *Dent v. Oregon City,* 106 Or. 122.

It follows, therefore, that the terms of the ordinance in controversy in this action must be construed, not as a grant, but as a regulation of a right pre-existing. This conclusion disposes of plaintiff's contention that the ordinance in question is one of the class described as "any ordinance or resolution, granting, extending, changing, or modifying the terms and conditions of a franchise." Comp. St. 1922, sec. 3719.

At common law a "franchise" is a royal privilege or branch of the King's prerogative subsisting in the hands of the subject. Being, therefore, derived from the crown, they must arise from the King's grant; or in some cases to be held by prescription which, as has been frequently said, presupposes a grant. 1 Cooly's Blackstone (3d. ed.) * 37.

A somewhat earlier definition than that we find in Blackstone is: "A franchise (understood properly) is a hereditament, and a thing of interest and assignable and transferable. But a license is only *relaxatio juris,* a dispensation with the law, a privilege to a certain person to do an act with impunity.  *  *  *  When the King grants a market he creates and grants a real thing; but when he gives liberty to trade he does not create or grant a real thing, but only discharges or prevents a penalty inflictable for trading without leave."

A later author defines the term "franchise" as follows: "A franchise can be acquired only by royal grant, actual or presumed, and may be assigned by deed." Holland, Elements of Jurisprudence (8th ed.) 191.

The term has been defined by the supreme court of the United States as follows: "Franchises are special privileges conferred by government upon individuals, and which

do not belong to the citizens of the country generally, of common right." *Bank of Augusta v. Earle,* 13 Pet. (U. S.) * 519.

The conclusion follows therefore that, the ordinance in controversy, properly construed, being a regulatory enactment, and not a grant, the rights conferred cannot be denominated a franchise, nor their legality be in any manner affected by a failure to submit the same to the vote of the electors, as provided for in section 3719, Comp. St. 1922. See, also, *Ex parte Dickey,* 76 W. Va. 576; *Burgess v. Mayor and Aldermen of Brockton,* 235 Mass. 95; *Boise City Artesian H. & C. Water Co. v. Boise City,* 123 Fed. 232; *Grand Rapids, G. H. & M. R. Co. v. Stevens,* 219 Mich. 332.

Nor do we find this ordinance vulnerable to the objection that the provisions thereof are in excess of the powers now possessed by the cities of metropolitan class.

Section 8390, Comp. St. 1922, provides: "Nothing contained in the provisions of this article shall be construed to limit the power of local authorities to make, enforce and maintain any ordinances, rules or regulations, in addition to the provisions affecting motor vehicles."

Section 1, ch. 39, Laws 1925, authorizing the plaintiff to extend, add to, and supplant its street railway lines with motor-propelled busses contains the following as a proviso thereto: "Nothing in this act shall be construed to deprive any city of this state of the right and power to grant licenses issued by the proper city authorities to other auto or motor-busses, taxicabs or vehicles, to use the streets of the city in carrying passengers for hire, and to regulate such carriers as to rates, fares and service."

The city charter itself contains the following provisions: That cities governed by this act shall have the power by ordinance: "(a) To regulate the transportation of articles through the streets, and to prevent injuries to the streets from overloaded vehicles, and regulate the width of wagon tires, and tires of other vehicles; (b) to regulate the use of vehicles propelled by steam, gas, electricity, or other motive

power, operated on the streets of the city; (c) to raise revenue by levying and collecting a tax on any occupation or business within the limits of the city and regulate the same by ordinance; (d) to make and enforce all police regulations for the good government, general welfare, health, safety and security of the city and the citizens thereof, in addition to the police powers expressly granted herein, and, in the exercise of the police power, may pass all needful and proper ordinances; and shall have power to impose fines, forfeitures, penalties, and imprisonment at hard labor for the violation of any ordinance, and to provide for the recovery, collection and enforcement thereof; and in default of payment to provide for the confinement in the city or county prison, workhouse or other place of confinement, with or without hard labor, as may be provided by ordinance."

It is plain from the foregoing that the integrity of the original grants of power to cities of metropolitan class has been maintained and has in no manner been impaired. In construing this charter, this court has announced the rule:

"A city of the metropolitan class has control of its streets, and, while it cannot prohibit the general and ordinary use for which the streets are constructed, it is within the reasonable discretion of the authorities of such city to prescribe the uses to which a street may be put and to regulate the traffic thereon." *State v. Omaha & C. B. Street R. Co.*, 100 Neb. 716.

A general construction of the terms of the charter in the light of this decision leads to the conclusion that the ordinance in question is within the powers conferred upon the mayor and council. Indeed, if this ordinance be given full force and effect, it does no more than afford to the traveler a regular and certain service between definite termini by competent and careful drivers, in vehicles properly constructed and maintained and operated under the rules established to promote safety for a definite consideration, with

the added assurance that responsibility for the results of negligence of the driver or proprietor is secured.

The enactment of this ordinance appears to be within the reasonable exercise of the powers granted by the charter involved, and to constitute merely the adoption by the proper authorities of a measure deemed by them to be "necessary for the accommodation and protection of strangers and the traveling public in person and in property." Comp. St. 1922, sec. 3489, subd. 5. So considered, the ordinance in question is valid, and the district court for Douglas county erred in enjoining the enforcement thereof, and its judgment is reversed and the action dismissed.

REVERSED AND DISMISSED.