CITY OF ST. PAUL v. TWIN CITY MOTOR BUS COMPANY.[1]

October 28, 1932.

No. 28,972.

*Lewis L. Anderson,* for appellant.
*Doherty, Rumble, Bunn & Butler,* for respondent.

Wilson, C. J.

Plaintiff appealed from an order sustaining a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.

The action is to recover $128,282.97, as license fees for the years 1925 to 1930, and interest.

The city of St. Paul has a home rule charter. Chapter X thereof relates to franchises. We quote two sections thereof:

"Gross Earnings—Sec. 155. Every corporation or person exercising any franchise or privilege, in, over, under, or upon any of the streets or public places or elsewhere in the City of St. Paul, shall pay into the treasury of said city annually on or before the first Monday in March, a license fee in a sum equal to at least five per cent of the gross earnings derived or accruing from the exercise or enjoyment within said city of any franchise or privilege during

the previous calendar year. This section shall apply to all franchises granted prior to the adoption of this charter and to all other franchises unless the ordinances granting said franchises shall exempt the grantees and others holding through or under them from said tax."

"LIMITATIONS—Sec. 159. No person or corporation shall occupy or have any special rights or privileges, in, over, upon or under any street, highway, alley, public ground, levee, or other property of said city unless said right is duly granted in the manner hereinabove provided."

Defendant is a common carrier operating its motor buses over the streets of St. Paul, carrying its passengers for hire. The city has never issued to it any franchise. Nor has the city exempted it from the payment of the license fee contemplated in the charter as above quoted. The city has not extended to the defendant any privilege of any kind relative to its use of the streets.

The contention of the plaintiff is that defendant is liable for the license fee which it is claimed is so fixed by the charter. This contention rests upon the theory that, since the defendant used the streets without interference from the city, there was an implied promise to pay a license fee of five per cent on its gross earnings. If under the circumstances the defendant would be obligated to pay such license fee or tax, the complaint would state sufficient facts to constitute a cause of action.

The city may impose regulation upon defendant's use of the streets and can compel its acceptance of a franchise as a condition to its use thereof. The city charter is the fundamental law of the municipality and under which the city council may legislate. The charter provides for the payment of "a license fee in a sum equal to at least five per cent of the gross earnings." This language contemplates some discretion in the judgment of the city council which must fix the exact rate which may be most appropriate for the licensee to pay. It vests in the council the power and duty of fixing the exact amount of the license fee. The fundamental law of the city fixes only the minimum rate. The fee cannot be less.

It requires that the exact and appropriate rate be fixed in the franchise and as a part of the contract which the council may deem advisable to make. Section 155 is not self-executing, but calls for positive action on the part of the city council to carry out its authorization. This has not been done. The result is that the license fee has not been determined. Hence the complaint is insufficient. We might well stop here.

Our statute for the regulation of motor vehicles on our highways and subjecting them to the supervision of the railroad and warehouse commission (L. 1925, p. 178, c. 185, as amended by L. 1929, p. 149, c. 154, § 1) recognized existing charter provisions or ordinances in the cities of the first class, which includes plaintiff, and the right of regulation by local authority in all municipalities and the exercise of such necessary police power in relation thereto as may be proper. Jefferson H. T. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960.

■ A study of said chapter X leads to the conclusion that the word "privilege" as used in § 155 means a special right enjoyed by one under legislative authority—a right not belonging to the public generally—a right resulting only from the affirmative action of the city council.

There is here involved a privilege that may be regulated. This court has on various occasions referred to such privilege. Schultz v. City of Duluth, 163 Minn. 65, 203 N. W. 449; Raymond v. Holm, 165 Minn. 215, 206 N. W. 166; State v. LeFebvre, 174 Minn. 248, 219 N. W. 167. But we were there dealing with a legislative regulation. No case has been called to our attention wherein we have held that such use of the streets or of the highways by such a common carrier as the defendant was a privilege that needed a grant. We have not said that in the absence of regulation on the subject it was unlawful for one to operate a motor bus upon the highways in the transportation of passengers for hire. Prior to 1925, when our legislature enacted laws for the regulation of such motor bus common carriers, we had no statute law (except the motor vehicle tax law) referring to their operation. Many existed and were in oper-

ation, but they had not been granted any privilege to operate. Our legislature recognized this by granting special rights to all who were "operating in good faith on the first day of the 1925 legislative session." L. 1925, p. 178, c. 185, § 10.

■ Defendant used the plaintiff's streets the same as any person or corporation generally does. But it hauled passengers for hire. In doing this did it act within the law? No legislative act by the city council or otherwise said "you may." No statutory law said "no."

At common law the right of use of the highways is general and includes all reasonable kinds of travel and transportation. The highways are to serve the public. They are for the use of all. There is no doubt that at common law there is a public right to operate a motor bus on the public streets for the transportation of passengers for hire. Egerly's Case, 3 Salkeld, 183; Rex. v. Cross, 3 Campbell, 224; 13 R. C. L. 254; Carli v. Stillwater St. Ry. & T. Co. 28 Minn. 373, 10 N. W. 205, 41 Am. R. 290; Newell v. M. L. & M. Ry. Co. 35 Minn. 112, 27 N. W. 839, 59 Am. R. 303; Cater v. N. W. Tel. Exch. Co. 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 A. S. R. 543; Grand Rapids G. H. & M. Ry. Co. v. Stevens, 219 Mich. 332, 189 N. W. 2; Omaha & C. B. St. Ry. Co. v. City of Omaha, 114 Neb. 483, 208 N. W. 123; Park Hotel Co. v. Ketchum, 184 Wis. 182, 199 N. W. 219, 33 A. L. R. 351; Chicago M. C. Co. v. City of Chicago, 337 Ill. 200, 169 N. E. 22, 66 A. L. R. 834; New State Ice Co. v. Liebmann, 285 U. S. 262, 52 S. Ct. 371, 76 L. ed. 479; McCutcheon v. Wozencraft (Tex. Civ. App.) 230 S. W. 733; Id. (Tex. Com. App.) 255 S. W. 716.

For its historical value we quote from respondent's brief:

"In Egerly's Case, 3 Salkeld, 183, the defendant was indicted because by overloading his wagon and using extra horses he ruined the highway between Oxford and London. He was a common carrier and is so described in the report, but the indictment was not for operating as a common carrier without grant, but for carrying unreasonable loads. In Rex v. Cross, 3 Campbell, 224, the operator of the Greenwich stagecoach was indicted. His coaches stood in

London streets for hours, three deep at times, and obstructed other traffic. Lord Ellenborough dealt with him with vigor. The defendant had a right, he said, to operate a stagecoach line, and to pick up and deposit passengers in London streets, but he must find some other place to keep his coaches between trips. 'No one can use the King's highway for a stable yard.' But it was no offense to use the streets for public carriage."

■ Such being the common law, defendant did not require any affirmative authority for it to use plaintiff's streets. It required express legislative prohibition to make defendant's use of the streets unlawful rather than express grant to render it lawful. In the absence of express legislative authority, an action cannot be maintained to collect a license fee where a license has not been applied for or granted.

Defendant was within its rights in being upon and so using the streets, but it was and is at all times the subject of legislative control and license, which the city council has not exercised. There can be no doubt that plaintiff has the right to regulate and control defendant's business. The latter must yield to all reasonable regulation. We deal here only with plaintiff's effort to collect the claimed tax. It follows that defendant was not by implication obligated to pay plaintiff the tax or license fee which it now attempts to collect. The complaint does not state facts sufficient to constitute a cause of action.

We note that in State ex rel. Carter v. Kall, 53 Mont. 162, 162 P. 385, 5 A. L. R. 1309, it was held that a civil action would not lie to collect a license tax from one to whom the state refused a license but who nevertheless engaged in business in violation of law.

The importance of the case and the earnestness with which plaintiff's counsel urges his contention prompts us to refer to a few of the authorities upon which he places reliance.

As we read Bloomington & N. Ry. E. & H. Co. v. City of Bloomington, 123 Ill. App. 639, the utility involved, a street railway, acquired and held a grant given to its predecessor to which the municipality had by ordinance consented. While so operating un-

der such a franchise, the ordinance in controversy was passed imposing an annual license fee of $25 on each car regularly operated by it. Upon the refusal to pay, the action was successfully prosecuted to collect the license fee on 12 cars. The defendant operated under express permission. Quite different from this case. The action was sustained upon the theory that the grant contained no express exemption to the company from the operation of such regulative restrictions and burdens as the legislature, or the city exercising delegated power therefrom, might properly impose as reasonable and proper restrictions and burdens. The license fee was a regulation to aid in the necessary incidental police protection.

Star Trans. Co. v. City of Mason City, 195 Iowa, 930, 192 N. W. 873, 881, relates to the reasonable municipal regulation and control of the bus business. It was there said [195 Iowa, 950]:

"It is enough to say that, construing and considering them all, we are of opinion that, under the statutes, the defendant city has the right to pass and enforce an ordinance which is reasonable, regulating the conduct of the plaintiff's business on its streets, and may require plaintiff to take out a license; that the plaintiff has not the right to conduct its business as carried on, without the consent of the city, and that the city has the right to prohibit such use unless and until plaintiff shall make application for and be granted a license in accordance with the statutes and the ordinance. That a person may make extraordinary use of the streets, as here, is a privilege, and not a matter of right, and under such circumstances, plaintiff has not the right to so use the streets without the consent of the city."

The foregoing language, like the language of this court hereinbefore mentioned relating to "privilege," is directed at regulation. The holding that the bus company could not so use the streets as a matter of right and without the consent of the city is not construed by us as a holding that the use was unauthorized in the absence of the express legislative authority to control. There, as here, the city had a right to demand compliance with regulatory

measures. The court was there speaking from the standpoint of regulation.

In Mendocino County v. Bank of Mendocino, 86 Cal. 255, 24 P. 1002, the action was to recover a license fee imposed by an ordinance under authority of a statute. The defendant carried on a business (banking) which required a license. It refused to take out the license. The action in assumpsit was successful for the simple reason that a statute in California authorized such suit to recover the license tax. In the case at bar there is no such statutory authority for this action.

In Jersey City v. North Jersey St. Ry. Co. 78 N. J. L. 72, 73 A. 609, the Jersey City & Bergen Company held a franchise under the terms of which it was required to pay a license fee of ten dollars per car. The defendant in the action got its franchise under the "Traction Act" of 1893, yet by the terms of its franchise it was required to acquire the consent of the owners of the then existing street railway. Its franchise was granted upon certain conditions, one of which was that it would pay all liabilities of the other company. This included the license fees which rested in contract. It was held that since the defendant continued to exercise the franchise and to run its cars it impliedly promised to pay the fees. A grant was involved. There was a franchise, in fact two franchises. Here there was none.

State v. C. & N. W. Ry. Co. 128 Wis. 449, 108 N. W. 594, 608, does not support the city's contention. That case involved the gross earnings tax. It recognizes that a privilege tax involved the element of contract. The gross earnings tax involved an exchange of equivalents between the state and the company. The one gives over a proportion of its earnings, the other gives the privilege to operate. The court there said [128 Wis. 500]:

"By operating the road the company impliedly promises to pay the state the specified compensation for such privilege, which is fixed and certain, since it is based on past business. The state by permitting the operation of the road acquires as an asset the statutory right to the specified proportion of the previous year's gross income."

But the law imposed the gross earnings tax as an absolute obligation upon the railroads operating in the state. There was no such law in this case. The court there construed an accepted offer of such legislation as creating by implication a contractual obligation to pay the tax. It was illegal for one to operate a railroad in Wisconsin without paying the tax, and the court construed the action of the railroad as constituting an implied acceptance of the mandatory statute requiring the payment of such tax.

In Alaska Pacific Fisheries v. Territory of Alaska (C. C. A.) 236 F. 70, there was a statute giving a civil remedy for the collection of a tax due under a revenue act.

Affirmed.