CITY OF ST. PAUL v. TWIN CITY MOTOR BUS COMPANY.[1]

October 20, 1933.

No. 29,643.

[1]Reported in 250 N. W. 572.

See 187 Minn. 212, 245 N. W. 33.

*Doherty, Rumble, Bunn & Butler,* for appellant.

*Lewis L. Anderson,* for respondent.

*OLSEN, Justice.*

Defendant corporation appeals from an order denying its motion for a new trial.

The plaintiff, city of St. Paul, is a city of the first class operating under a home rule charter adopted in the year 1900. The defendant is a corporation conducting and carrying on the business of a common carrier of passengers for hire, by motor buses, over and upon the public streets of the city over regular routes, some of which routes are wholly within the city, two extending into the adjoining city of Minneapolis, and some extending into smaller neighboring communities. It has been engaged in that business for some seven years last past.

The defendant has no franchise or grant of the right to operate its buses over and upon the streets of the city. This action was brought to restrain defendant from so operating without a license or franchise. The trial court made findings of fact, and as conclusions of law found plaintiff entitled to have, and directed, judgment restraining the defendant from continuing to operate the two routes between St. Paul and Minneapolis.

The question presented is whether, from the facts found, the court erred in concluding that the plaintiff was entitled to judgment restraining defendant's operation of its buses over the two routes mentioned.

The findings of the court do not state the charter provisions of the city of St. Paul except to state that it is a home rule charter

under art. 4, § 36, of the state constitution. But the district courts and this court take judicial notice of the provisions of the city charter, and no doubt the trial court considered the provisions therein.

The city has two ordinances, Nos. 4026 and 6859, set out in the findings. Ordinance No. 4026 required a franchise and provided regulations and a license fee for the operation of passenger buses on the streets. But ordinance No. 6859 amended the prior ordinance so that its provisions "shall not apply to motor omnibuses operating under a state certificate of public convenience and necessity, in compliance with and as authorized by Chapter 185 of the General Laws of Minnesota for 1925." The court found that defendant holds such state certificates for operation of its buses over the lines here in question.

L. 1925, p. 178, c. 185, as amended, reserves to cities of the first class, as we read it, all control and regulation over the use of public streets therein by transportation companies which they had under charter provisions or ordinances in force January 1, 1925, unless repealed after said date, or which they have under their police power.

The two ordinances do not impose any duty upon the defendant to obtain a license or franchise, or prohibit it from operating without a license or franchise. The question remains whether, by the provisions of the city charter, the defendant is required to have a license or franchise for conducting its business over and upon the streets of the city. Chapter X of the city charter covers the subject of franchises and licenses for use of streets and highways within the city. Section 150 provides that no franchise shall be granted except by ordinance approved at a general or special election by the qualified voters of the city. It further provides that the council may by ordinance, by vote of four-sevenths of its members, grant a temporary license for one year for use of streets for public service purposes, and that such license may be renewed twice for a year at a time.

Section 155 of the charter fixes a minimum license fee for any person or corporation exercising any franchise or privilege in, over, under, or upon any street in the city.

Section 159 provides:

"No person or corporation shall occupy or have any special rights or privileges, in, over, upon or under any street, highway, alley, public ground, .levee, or other property of said city unless said right is duly granted in the manner hereinabove provided."

In the argument here defendant's counsel frankly concede that if the charter provision in § 159 requires defendant to obtain a franchise or license in order to operate its buses on the city streets then it must so do. It is the earnest contention for the defendant that its use of the streets to carry passengers for hire, by motor buses, from place to place within the city, or from the city to outside points, is not a special right or privilege requiring either license or franchise under the charter provisions referred to; that its use of the streets is not unlawful and not a special right or privilege within the meaning of § 159 of the charter.

Both parties cite and rely to some extent on the well considered opinion in City of St. Paul against this defendant reported in 187 Minn. 212, 245 N. W. 33, 34. The question there was whether the city, without having granted any franchise or license fixing any license fee for defendant to pay, could collect the minimum five per cent license fee provided in § 155 of the charter to be paid by any person or corporation exercising any franchise or privilege in, over, or upon any of the streets of. the city. It was held that this section was not self-executing, but called for positive action on the part of the city council fixing, by some grant or franchise, the rate to be paid [187 Minn. 215] "as a part of the contract which the council may deem advisable to make." The very first sentence of the opinion, after stating the facts and quoting §§ 155 and 159 of the charter, is [187 Minn. 214]: "The city may impose regulation upon defendant's use of the streets and can compel its acceptance of a franchise as a condition to its use thereof." It is further said [187 Minn. 215]: "There is here involved a privilege that may be reg-

ulated." Again, it is said [187 Minn. 217]: "There can be no doubt that plaintiff has the right to regulate and control defendant's business. The latter must yield to all reasonable regulation. We deal here only with plaintiff's effort to collect the claimed tax." The decision in that case is clearly expressed in the sentence [187 Minn. 217]: "In the absence of express legislative authority, an action cannot be maintained to collect a license fee where a license has not been applied for or granted."

Whether or not defendant's use of the streets be held to be a "special right or privilege" under § 159 of the charter, it seems clear that it is a privilege which the city has the right to regulate and license under its general power of control over city streets and under its police power. That the right to use public streets and highways in a city for commercial purposes, for carrying passengers and freight for hire over regular routes, is a privilege which the city may regulate and require to be conducted under a franchise or license is settled by Schultz v. City of Duluth, 163 Minn. 65, 203 N. W. 449, and State v. LeFebvre, 174 Minn. 248, 219 N. W. 167, cited with approval in City of St. Paul v. Twin City M. B. Co. 187 Minn. 212, 245 N. W. 33. The subject is so fully treated in these cases that further consideration and citation of authorities is not here necessary. Attention may also be called to § 127B of the charter, expressly granting power to the city council, by ordinance, to define, license, regulate, and restrain the use of the streets by vehicles of all kinds, and the carrying and hauling of persons and property for hire.

■ Reading and considering the various charter provisions together, we construe the words "special rights or privileges," used in § 159, to include any right or privilege for the use of streets which the city, by its council, is authorized to license and regulate by ordinance. Nothing said in the former case between these parties in 187 Minn. 212, 245 N. W. 33, conflicts with this construction of the charter provisions.

■ Defendant has failed and refused to apply for a franchise or license. It sufficiently appears that it has contested and does in good faith contest the right of the city to require it to obtain and

have such franchise or license. As a common carrier of passengers for hire, defendant is engaged in a business in which the state and the public, as well as the plaintiff and defendant, have an interest. That it is required to obtain and has obtained a certificate from the railroad and warehouse commission to operate these lines clearly evidences such interest. To obtain a license to operate, an ordinance adopted by the vote of four-sevenths of the members of the city council is required. To obtain a franchise, an ordinance approved by vote of the electors is required. In either case considerable time is required to obtain the necessary authority to operate. The defendant should not be put out of business during the time required for obtaining a license or franchise. The court directed judgment for a peremptory injunction without any qualification or time within which the defendant could apply for and the council grant a license or franchise. This was error in the situation here shown.

The case is remanded to the district court with directions to amend its conclusions of law and order for judgment so as to grant to the defendant sufficient time, a reasonable time, to be fixed by that court, for application to and negotiation with the city council for a franchise or license, and to provide that no peremptory injunction issue until the expiration of such time and the refusal of the defendant to accept such reasonable license or franchise as the city council may adopt.

Modified.