

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

May 29, 1969

Rep. Jack Blanton　　　　　　　　Opinion No. M-407
House of Representatives
State Capitol　　　　　　　　　　Re:　Whether House Bill 700,
Austin, Texas　　　　　　　　　　　　61st Legislature, can
　　　　　　　　　　　　　　　　　　　legally prohibit a cor-
　　　　　　　　　　　　　　　　　　　poration from engaging
　　　　　　　　　　　　　　　　　　　in the business of farm-
　　　　　　　　　　　　　　　　　　　ing, livestock feeding
Dear Mr. Blanton:　　　　　　　　　　or ranching.

　　　　In your recent request for an opinion from this office
you stated:

　　　　　　　"I am enclosing a copy of House Bill 700
　　　　　　of which I am chairman of the sub-committee.
　　　　　　The point has been raised that it may be
　　　　　　illegal for us to prohibit a corporation
　　　　　　from farming in the State of Texas.　We
　　　　　　request your opinion on this matter."

　　　　House Bill 700 is an act to amend Article 2.01, Subsection
B of the Texas Business Corporation Act and to add provisions
to that Article.

　　　　Pertinent provisions of House Bill 700 read as follows:

　　　　　　　"BE IT ENACTED BY THE LEGISLATURE OF
　　　　THE STATE OF TEXAS:

　　　　　　　Section 1.　BUSINESSES IN WHICH CORPORA-
　　　　TIONS MAY NOT ENGAGE.　No corporation, foreign
　　　　or domestic, except as provided in this Act,
　　　　may engage in the business of farming, live-
　　　　stock feeding, or ranching.

　　　　　　　Sec. 2.　DISPOSING OF OPERATIONS AND
　　　　LAND.　(a)　All corporations except those
　　　　falling under the provisions of Section 4

-2011-

of this Act which are engaged in farming, livestock feeding, or ranching operations at the effective date of this Act shall dispose of all such interests and withdraw from those operations within two years after the effective date of this Act.

(b) All corporations except those falling under the provisions of Section 4 of this Act which are engaged in farming, livestock feeding, or ranching operations which own or hold real estate which was acquired prior to the effective date of this Act and which is used or usable for farming, livestock feeding, or ranching purposes, but which is not reasonably necessary to the conduct of the other business of the corporation, shall dispose of the real estate within 10 years after the effective date of this Act. A corporation holding real estate subject to the provisions of this section may use the land for farming, livestock feeding, or ranching purposes until the date by which it must be sold.

(c) The ownership limitation provided in this section shall be deemed a covenant running with the title to the land against any grantee, successor, or assignee of a corporation which is also a corporation.

Sec. 3. DISPOSING OF AFTER-ACQUIRED LAND. (a) A corporation which after the effective date of this Act, acquires real estate used or usable for farming, livestock feeding, dairying or ranching purposes by judicial process, operation of law, or otherwise, shall dispose of all such real estate, except that which is reasonably necessary in the conduct of its other business, within 10 years after the real estate was acquired.

(b) The 10-year limitation provided by this section shall be deemed a covenant running with the title to the land against any grantee, successor, or assignee of a corporation which is also a corporation.

Sec. 4. CORPORATIONS WHICH MAY ENGAGE IN FARMING, LIVESTOCK FEEDING, AND RANCHING OPERATIONS. (a) Farming, livestock feeding, or ranching operations may be conducted by a corporation in which

(1) all shareholders are actively engaged in the management or operation of the corporation and at least 80 percent of the gross income of the corporation comes from farming, livestock feeding, or ranching operations; and

(2) there are no shareholders other than trusts or estates who are not natural persons.

(b) The Secretary of State of the State of Texas shall accept articles of incorporation with a purpose clause or clauses authorizing it to conduct farming, livestock feeding, or ranching operations, provided such articles of incorporation contain the limitations set forth in Subsection (a) of this section.

Sec. 5. VIOLATIONS AND PENALTIES. Violations of the provisions of this Act are subject to the provisions of Articles 4.06 and 4.07, Texas Miscellaneous Corporation Laws Act (Articles 1302-4.06 and 1302-4.07, Vernon's Texas Civil Statutes).

Sec. 6. Subsection B, Article 2.01, Texas Business Corporation Act, is amended to read as follows:

"B.  No Corporation may adopt this Act
or be organized under this Act or obtain
authority to transact business in this State
under this Act:

"(1)  If any one or more of its pur-
poses for the transaction of business in
this State is expressly prohibited by any
law of this State.

"(2)  If any one or more of its pur-
poses for the transaction of business in
this State is to engage in any activity
which cannot lawfully be engaged in with-
out first obtaining a license under the
authority of the laws of this State to en-
gage in such activity and such a license
cannot lawfully be granted to a corporation.

"(3)  . . . ."

Determination of the legality of House Bill 700 necessarily
requires an examination of the Texas law pertaining to regula-
tion of statutory entities, vested property rights and consti-
tutional prohibitions against impairment of contractual obli-
gations.

Article 1, Section 17, Constitution of Texas, expressly
provides that "all privileges and franchises granted by the
Legislature, or created under its authority shall be subject
to the control thereof."

Article 9.12, Texas Business Corporation Act, which
superseded old Article 1318, Vernon's Civil Statutes,
states:

"The legislature shall at all times have power
to prescribe such regulations, provisions and
limitations as it may deem advisable, which reg-
ulations, provisions and limitations shall be
binding upon any and all corporations subject
to the provisions of this Act, and the Legis-
lature shall have power to amend, repeal or
modify this Act."  (Emphasis added.)

It is, therefore, clear that in Texas the legislature has reserved the power to alter, suspend or repeal all laws, providing for organization of corporations, and that such reservation becomes a part of the charter of the corporation. 18 Am.Jur.2d 631-632, Corporations, Sec. 92, wherein it is said:

". . . Corporations are the creations of the state, endowed with such faculties as the state bestows and subject to such conditions as the state imposes; and if the power to modify their charters is reserved, that reservation is a part of the contract, and no change within the legitimate exercise of the power, whether directly or by an independent general regulation, can be said to impair its obligations.

"General constitutional or statutory provisions in force at the time of incorporation reserving power in the legislature to amend, annul, or repeal any such corporation, are a part of the corporate charter, so much so, in fact, that it has been held that the right to repeal the charter will not be affected by the repeal of the general law . . ."

In accord, Jefferson County Title Guaranty Co. v. Tarver, 119 Tex. 410, 29 S.W.2d 316, 318 (1930).

Texas authorities likewise recognize that a corporation is a creature of the state and it is therefore subject to its dominion and control. Zerr v. Lawlor, 300 S.W. 112 (Tex.Civ. App. 1927, no writ); McCutcheon v. Wazencraft, 230 S.W. 733, rev. on other grounds 255 S.W. 716 (1921); Waters-Pierce Oil Co. v. Texas, 177 U.S. 28 (1900).

House Bill 700, if enacted, would not terminate the existence of corporations now engaging in the sole business of farming and ranching, but would require such corporations to dispose of their interests in such activities within two years from the effective date of the Act. All real estate acquired prior to such date, used or usable for farming, livestock feeding, or ranching, not reasonably necessary to the conduct of the other business of the corporation, is required to be disposed of within ten years after the effective date of the

Act. Article 2.02 of the Texas Business Corporation Act, and Article 1302-4.01, Vernon's Civil Statutes, Miscellaneous Corporation Laws Act, require that land owned by a corporation must be held as a necessary part of the business of the corporation.

Consequently, we must determine whether such provisions would violate the provision found in Article 1, Section 16 of the Constitution of Texas, prohibiting retroactive laws or laws impairing the obligations of contracts. In addition, the question of violation of due process and equal protection of the laws, in contravention of the Fourteenth Amendment of the U. S. Constitution, is raised for consideration.

It should be observed in this connection that unless "vested rights" are actually destroyed or impaired, an act is not invalid even when retroactive in its operation. Paschal v. Perez, 7 Tex. 348 (1851); City of Ft. Worth v. Manow, 284 S.W. 274 (Tex.Civ.App. 1926, error ref.) The question thus presents itself, does House Bill 700 impair any property rights which may be deemed "vested" so that it amounts to an arbitrary exercise of power in denial of the equal protection of the laws, constituting a deprivation of property without due process of law? Does the legislature have the power to pass a law which has the effect of terminating the corporate existence of such farming and ranching corporations; that is, by eliminating the corporate purposes of farming, ranching, etc.?

We find the law on these questions to be pertinently stated in 18 Am.Jur.2d 633, Corporations, Sec. 33, as follows:

"A reservation . . . in a general law of power to amend, alter, or repeal affects the entire relation between the state and the corporation and places under legislative control all rights, privileges, and immunities derived by its charter directly from the state, including its very existence. . .

". . . Under the reserved power of repeal the legislature may terminate the corporate existence . . ."

Among the cases cited in support of the latter statement are
Erie R. Co. v. Williams, 233 U.S. 685 (1914); Spring Valley
Waterworks v. Schottler, 110 U.S. 347 (1884); State v.
Louisville & N.R. Co., 97 Miss. 35, 51 So. 918, 53 So. 454
(1910); People v. O'Brien, 111 N.Y. 1, 18 N.E. 692 (1888).

In 18 Am.Jur.2d 636-637, Corporations, Sec. 94, we find
this statement:

> ". . . it has been held that the reserved
> power of a state to amend a corporate charter
> is not limited to changes or alterations solely
> between the state and the corporation, but au-
> thorizes amendments and alterations, within
> certain limitations, directly affecting stock-
> holders in their relations to the state, to
> the corporation, and to each other, and that
> such power may be invoked to sustain charter
> alterations justified by the advancement of
> public interest, even though they affect con-
> tractual rights between the corporation and its
> stockholders and between stockholders inter
> se. . ."

It is held, however, that the reserved power to amend or
repeal corporate charters does not give the legislature the
power to impair or destroy the "executed" contracts of third
persons with the corporations, as distinguished from "execu-
tory" contracts at the time the statute takes effect. Conse-
quently, as to the latter, it is held that

> ". . . The fact that a repealing statute de-
> stroys the right of a corporation to continue
> in existence under the statute repealed does
> not make such repealing statute unconstitu-
> tional even as against bondholders of the cor-
> poration. The execution of the mortgage and
> the issuing of bonds secured by the property
> of the corporation does not affect the right
> of the legislature to repeal the statute."

18 Am.Jur.2d 638, Corporations, Sec. 95; People v. Calder, 153
Mich. Sup. 724, 117 N.W. 314 (1908).

We do not perceive any attempt in House Bill 700 to impair or destroy the contracts of third persons with the affected corporations. If such legislation should unconstitutionally threaten such am impairment, as applied to the specific facts of the case, and the legislature has not provided some special remedy, the courts will enforce such property rights by the means within their power. 18 Am.Jur.2d 636, Corporations, Sec. 94.

We agree with the Supreme Court of Illinois in its observation that

> ". . . no corporation has a constitutional right to be a corporation and it is fundamental that corporate powers and charters are taken subject to the prerogative of the state to modify or amend the enabling legislation at any time. Kreicker v. Naylor Pipe Co., 374 Ill. 364, 29 N.E.2d 502. And this matter is removed from the sphere of constitutional consideration by reason of the express language of the Business Corporation Act . . . which reserves to the General Assembly the power to repeal, amend or modify the act and to impose limitations or restrictions at the pleasure of the General Assembly."

Braeburn Securities Corp. v. Smith, 15 Ill.Sup.2d 55, 153 N.E.2d 806, 811-812 (1958), upholding an amendment to a statute limiting the general powers of corporations in respect to ownership and control of stock in banks and overruling the contention that such legislation impaired obligation of contract and was a denial of equal protection under the law.

In Asbury Hospital v. Cass County, 7 N.W.2d 438 (N.D.Sup. 1943), the court had before it a challenge to the constitutionality of an act, requiring any corporation, domestic or foreign, owning farm land, except that reasonably necessary to the conduct of its business, to dispose of the land within ten years from the date the Act took effect. It also prohibited such corporations from engaging in farming or agriculture in the future. In upholding the constitutionality of the statute against the contention by the plaintiff corporation that it operated to deprive the corporation of property without due process, the court said, beginning at page 452:

"As has been pointed out, there are constitutional or statutory provisions in many states restricting the right of corporations to acquire and hold real estate and requiring that such corporations dispose of real estate which they have acquired, within a fixed period of time.

"No instance has been called to our attention, and none has been found, where such legislation was predicated upon the proposition that the State was without power to require a corporation to dispose of real property that it had acquired before the statute or constitutional provision became effective; and in some of the states, the legislation restricting the right of corporations to hold real property is specifically made applicable as well to property that had been acquired before the legislation became effective as to property subsequently acquired . . . [citing numerous authorities]  In Commonwealth v. Clark County National Bank, supra, it was contended that inasmuch as the land sought to be escheated had been acquired by the corporation before the adoption of the constitutional provision, 'the corporation had a vested right which was unaffected by the adoption' of the new constitution containing the provision as 'there could be no impairment of the obligation of contract or rights acquired and vested before the making of the law.'" [187 Ky.Sup. 151, 219 S.W. 182]

"The Court of Appeals of Kentucky held that . . . (the) enactment of the statute did not result in 'unconstitutionally' impairing the 'contract or vested rights' of the corporation.

"We think it clearly follows from the principle announced by the Supreme Court of the United States in Connecticut Mutual Life Insurance Company v. Spratley, supra (172 U.S. 602) and Phillips

Petroleum Company v. Jenkins, supra (297
U.S. 629), that the provisions of the statute
in question here restricting the power of the
plaintiff to hold real estate, used or usable
for farming or agriculture and requiring it
to dispose of the same within ten years from
the date the act took effect, do not impair
the obligations of any plaintiff, or impair
any vested property right of the plaintiff.

"The question next presents itself whether
such provisions operate to deprive the plaintiff
corporation of its property without due process
of law. This question must be answered in the
negative. The State having the right to restrict
the power of the plaintiff and corporations sim-
ilarly situated as to the acquisition and owner-
ship of real estate within the State, it naturally
follows that any legislation which it might enact
to carry such policy into effect must have a be-
ginning, and 'the 14th Amendment does not forbid
statutes and statutory changes to have a beginning.'
Sperry & Hutchinson Co. v. Rhodes, 220 U.S. 502,
31 S.Ct. 490, 491, 55 L.Ed. 561. Of course, the
State could not put its new policy into effect
in such sudden and arbitrary manner as to prac-
tically sacrifice and confiscate the interest of
the corporation in the property that it had been
permitted to acquire within the State. In making
the change it must give the corporation reason-
able time in which to dispose of its property.
17 Fletcher, Cyc. Corps., p. 799. See also,
State v. Crescent Cotton Oil Co., 116 Miss. 398,
77 So. 185; Crescent Cotton Oil Co. v. State,
121 Miss. 615, 83 So. 680; Crescent Cotton Oil
Co. v. Mississippi, 257 U.S. 129, 42 S.Ct. 42,
66 L.Ed. 166. The statute gives . . . ten
years in which to dispose of it before such
property becomes subject to the provisions of
the statute providing for disposal of the prop-
erty under the procedure provided by the statute.
Clearly the period of time . . . cannot be said
to be so unreasonable or arbitrary as to operate

Rep. Jack Blanton, page 11 (M-407)

> to deprive corporations holding land subject to the statute of property without due process of law . . . [citing authorities] Such period is considerably longer than that prescribed in analogous laws in other states. Thus, Oklahoma prescribes seven years, and Kentucky five years . . ."

With respect to the discretion of the legislature in exercising its reserved power to repeal or alter the corporations charter, it is the general rule that no notice need be given to a corporation of such exercise. Jefferson County Title Guaranty Co. v. Tarver, supra, 119 Tex. 410, 29 S.W.2d 316 (1930); 18 Am.Jur. 638, Corporations, Sec. 95. House Bill 700, however, does allow two years from the effective date of the Act within which the subject corporation may withdraw from its farming and ranching operations and dispose of its interests. The ten year time period applies to real estate acquired prior to the effective date of the act. Such periods appear reasonable, and our research fails to reveal any such periods as having been held to be unreasonable.

Texas laws recognize limitations upon the right of corporations to hold property. Article 1302-4.01 V.C.S., the Miscellaneous Corporations Laws Act prohibits a corporation from acquiring land except such as may be necessary to conduct the type of business for which it is incorporated. Article 1302-4.05 of the Miscellaneous Corporation Laws Act accords relief only to the extent of permitting corporations to acquire urban land, such entities being known as Town Lot Corporations. Articles 8.19 and 3.40 of the Texas Insurance Code require disposition of certain realty of Casualty and Life Insurance Companies within a five year period. See Attorney General Opinion No. 0-1470 (1939). Article 4.02 Miscellaneous Corporation Laws Act, (old Article 1360, prior to 1961) Vernon's Civil Statutes, gives a fifteen year time period to corporations to dispose of lands deemed unnecessary to, or in excess of their business needs. All of these laws have remained unchallenged to this date and are presumably valid.

In view of all of the foregoing considerations, we conclude that House Bill 700, if enacted, would be constitutional.

## SUMMARY

House Bill 700, prohibiting corporations from engaging in the business of farming, livestock feeding, or ranching, and allowing a two year period for such corporations to withdraw from operations and to dispose of their interests and a ten year period to dispose of their real estate, if enacted, would be constitutional.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Neil Williams
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
Ralph Rash
Terry Goodman
Malcolm Quick
Bill Allen

W. V. GEPPERT
Staff Legal Assistant

HAWTHORNE PHILLIPS
Executive Assistant